UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| DAVID WRIGHT and SARAH HARRIS, | REPORT |
| | and |
| Plaintiffs, | RECOMMENDATION |
| v. | ---------------------------- |
| | DECISION |
| ORLEANS COUNTY, ORLEANS COUNTY | and |
| SHERIFF, COUNTY OF ORLEANS MAJOR CRIME | ORDER |
| TASK FORCE, ALBION POLICE DEPARTMENT, | |
| VILLAGE OF ALBION, TOWN OF ALBION, NEW | 14-CV-00622A(F) |
| YORK STATE OFFICE OF FIRE PREVENTION | |
| AND CONTROL, NIAGARA COUNTY SHERIFF, | |

ORLEANS COUNTY, ORLEANS COUNTY
SHERIFF, COUNTY OF ORLEANS MAJOR CRIME
TASK FORCE, ALBION POLICE DEPARTMENT,
VILLAGE OF ALBION, TOWN OF ALBION, NEW
YORK STATE OFFICE OF FIRE PREVENTION
AND CONTROL, NIAGARA COUNTY SHERIFF,
ALBION FIRE DEPARTMENT, ROCCO SIDARI,
both individually and in his capacity as Albion Fire
Chief, JEREMY GRAHM, both individually and in
his capacity as an employee of Albion Fire
Department, JEFFREY GIFALDI, both individually
and in his capacity as Investigator for the Village
of Albion Police Department, JOSEPH FULLER,
both individually and in his capacity as a police
officer for the Village of Albion Police Department,
JOHN DOYLE, both individually and in his capacity
as police officer for the Village of Albion Police
Department, KAROL L. HUGHES, both individually
and in his capacity as police officer for the Village of
Albion Police Department, ERIK HOLTER, both
individually and in his capacity as Investigator with
the New York State Office of Fire Prevention and
Control, DONALD CLAWSON, MICHAEL
JUTROWSKI, ADRIEAN ANN PARK, PAUL E.
SAVAGE, RANDI SHADIC, STEVEN M. NASSIVERA,
NICHOLAS LONG, THE HARTFORD,and SENTINEL
INSURANCE COMPANY, LTD.,

                                        Defendants.
_____

APPEARANCES:          ELLIOTT, STERN & CALABRESE, LLP
                      Attorneys for Plaintiffs
                      DAVID S. STERN, of Counsel
                      One East Main Street
                      Rochester, New York  14614

WEBSTER SZANYI, LLP
Attorneys for Defendants Orleans County,
  Oleans County Sheriff, County of Orleans
  Major Crime Task Force, Albion Police
  Department, Village of Albion, Town of
  Albion, Niagara County Sheriff, Jeffrey
  Gifaldi, Joseph Fuller, John Doyle, and
  Karol L. Hughes
MICHAEL P. McCLAREN,
ANDREW DYLAN, and
FLORINA ALTSHILER, of Counsel
1400 Liberty Building
Buffalo, New York  14202

ERIC T. SCHNEIDERMAN
NEW YORK STATE ATTORNEY GENERAL
Attorney for Defendants New York State Office
  of Fire Prevention and Control, Eric Holter, and
  Randi Shadic
STEPHANIE JOY CALHOUN,
Assistant Attorney General, of Counsel
Main Place Tower
Suite 300A
350 Main Street
Buffalo, New York 14202

GENNET KALLMAN ANTIN & ROBINSON, P.C.
Attorneys for Defendant Paul E. Savage
MARK LEIGH ANTIN, and
MICHAEL SCOTT LEAVY, of Counsel
140 Broadway
Litman Suite
New York, New York  10005

LECLAIR KORONA GIORDANO COLE LLP
Attorneys for Steven M. Nassivera, The Hartford,
  and Sentinel Insurance Company, Limited
LAURIE A. GIORDANO, and
MICHAEL E. NICHOLSON, of Counsel
150 State Street
Suite 300
Rochester, New York  14614

WALSH, ROBERTS & GRACE
Attorneys for Albion Fire Department,
  Rocco Sidari, and Jeremy Grahm
400 Rand Building
14 Lafayette Square
Buffalo, New York  14203-1928

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara on October 16, 2014, for all pretrial matters including preparation of a report and recommendation on dispositive motions.  The matter is presently before the court on motions to dismiss filed on October 15, 2014, by Defendants Orleans County, Orleans County Sheriff, County of Orleans Major Crime Task Force, Albion Police Department, Village of Albion, Town of Albion, Niagara County Sheriff, Jeffrey Gifaldi, Joseph Fuller, John Doyle, and Karol L. Hughes (Doc. No. 22), on November 3, 2014 by Defendants Steven M. Nassivera, The Hartford, and Sentinel Insurance Company, Limited (Doc. No. 28), on November 7, 2014, by Defendant Paul E. Savage (Doc. No. 30), and on November 17, 2014, by Defendants New York State Office of Fire Prevention and Control, Eric Holter, and Randi Shadic (Doc. No. 33), as well as Plaintiffs' motion for leave to file an amended complaint, filed December 8, 2014 (Doc. No. 36).[1]

## BACKGROUND

Plaintiffs Sarah Harris ("Harris"), and David Wright ("Wright") (together, "Plaintiffs"), commenced this civil rights action on August 1, 2014, alleging Defendants violated their constitutional rights in connection with the investigation of a fire that

---

[1] Although Defendants' motions to dismiss are dispositive, while Plaintiffs' motion to amend is nondispositive, the undersigned addresses all pending motions in this combined Report and Recommendation/Decision and Order in the interest of judicial economy.

destroyed Harris's business, and subsequent indictment, arrest, and prosecution of Plaintiffs for arson and criminal mischief in connection with the fire. Defendants to this action include Orleans County ("Orleans County"), Orleans County Sheriff ("Orleans County Sheriff"), County of Orleans Major Crime Task Force ("the Crime Task Force"), Albion Police Department ("Albion Police"), Village of Albion ("the Village"), Town of Albion ("the Town"), New York State Office of Fire Prevention and Control ("Fire Prevention Office"), Niagara County Sheriff ("Niagara County Sheriff"), Albion Fire Department ("Fire Department"), Rocco Sidari ("Sidari"), Jeremy Grahm ("Grahm"), Jeffrey Gifaldi ("Gifaldi"), Joseph Fuller (Fuller"), John Doyle ("Doyle"), Karol L. Hughes ("Hughes"), Erik Holter ("Holter"), Donald Clawson ("Clawson"), Michael Jutrowski ("Jutrowski"), Adriean Ann Park ("Park"), Paul E. Savage ("Savage"), Randi Shadic ("Shadic"), Steven M. Nassivera ("Nassivera"), Nicholas Long ("Long"), The Hartford ("Hartford"), and Sentinel Insurance Company, LTD ("Sentinel") (together, "Defendants"). Plaintiffs assert four claims for relief including (1) false arrest, Complaint ¶¶ 43-52 ("false arrest claim"); (2) malicious prosecution, Complaint ¶¶ 53-61 ("malicious prosecution claim"); (3) negligent hiring, supervision and retention, Complaint ¶¶ 62-69 ("supervisory liability claim"); and (4) false arrest, malicious prosecution, and deprivation of a fair trial in violation of Plaintiffs' civil rights under 42 U.S.C. § 1983 ("§ 1983"), and the New York State Constitution, Complaint ¶¶ 70-75 ("civil rights claim"). On September 26, 2014, Defendants Fire Department, Grahm, and Sidari ("Fire Department Defendants"), filed an Answer (Doc. No. 12).

On October 15, 2014, Defendants Orleans County, Orleans County Sheriff, the Crime Task Force, Albion Police, the Village, the Town, Niagara County Sheriff, Gifaldi,

Fuller, Doyle, and Hughes ("Prosecuting Defendants") filed a motion to dismiss (Doc. No. 22) ("Prosecuting Defendants' Motion"), supported by the attached Declaration of Andrew Dylan, Esq. (Doc. No. 22-1) ("Dylan Declaration"), and the Memorandum of Law in Support of Motion to Dismiss (Doc. No. 22-2) ("Prosecuting Defendants' Memorandum").  On November 3, 2014, Defendants Hartford, Sentinel and Nassivera ("Insurance Defendants"), filed a motion to dismiss (Doc. No. 28) ("Insurance Defendants' Motion"), attaching the Memorandum of Law in Support of Motion to Dismiss (Doc. No. 28-1) ("Insurance Defendants' Memorandum").  On November 7, 2014, Defendant Savage filed a motion to dismiss or, alternatively, for summary judgment (Doc. No. 30) ("Savage's Motion"), attaching in support the Memorandum of Law of Defendant Paul E. Savage (Doc. No. 30-1) ("Savage's Memorandum"), a Statement of Facts in Support of Motion for Summary Judgment (Doc. No. 30-2) ("Savage's Statement of Facts"), the Affidavit of Paul E. Savage in Support of Motion to Dismiss or for Summary Judgment (Doc. No. 30-3) ("Savage's Affidavit"), and the Declaration of Michael S. Leavy, Esq., in Support of Motion to Dismiss or for Summary Judgment (Doc. No. 30-4) ("Leavy Declaration"), with exhibits 1 through 4, and 5 (Docs. Nos. 30-5 through 30-10, and exhibit 3 (Doc. No. 31) ("Savage's Exh(s). __").   On November 17, 2014, Defendants Fire Prevention Office, Holter, and Shadic ("Fire Prevention Defendants"), filed a motion to dismiss (Doc. No. 33) ("Fire Prevention Defendants' Motion"), attaching Defendants' New York State Office of Fire Prevention and Control, Erik Holter, and Randi Shadic Memorandum of Law in Support of Motion to Dismiss for Failure to State a Claim Pursuant to F.R.C.P. 12(b)(6) (Doc. No. 33-1) ("Fire Prevention Defendants' Memorandum").

In opposition to the motions to dismiss, Plaintiffs filed on December 8, 2014, the Cross-Notice of Motion [*sic*] (Doc. No. 36) ("Plaintiff's Motion"), seeking leave to file an amended complaint, attaching the Declaration of David S. Stern, Esq. ("Stern Declaration"), the Memorandum in Support of Plaintiff' [*sic*] Opposition to Defendants' Motions to Dismiss Complaint and in Support of Cross Motion Permitting Plaintiffs to Amend Their Complaint ("Plaintiffs' Memorandum"), with a copy of the proposed amended complaint attached as Exh. A ("Proposed Amended Complaint"). Plaintiffs' Memorandum contains legal argument in support of Plaintiffs' Motion seeking leave to file an amended complaint but does not respond to the various arguments made by the Defendants moving to dismiss.

On December 23, 2014, Prosecuting Defendants filed in further support of dismissal the Reply Declaration of Florina Altshiler, Esq. (Doc. No. 38) ("Altshiler Reply Declaration"), attaching exhibits A and B ("Prosecuting Defendants' Reply Exh(s). __"). On January 12, 2015, Savage filed the Reply Memorandum of Law of Defendant Paul E. Savage in Further Support of Motion to Dismiss Complaint Pursuant to Fed.R.Civ.P. 12(b)(6), or, Alternatively, for Summary Judgment Pursuant to Fed.R.Civ.P. 56(a) (Doc. No. 41) ("Savage Reply"). On January 14, 2015, the Insurance Defendants filed the Attorney Declaration of Laurie A. Giordano, Esq. (Doc. No. 42) ("Giordano Reply Declaration"), attaching the Memorandum in Reply to Plaintiffs' Opposition to Motion to Dismiss and in Opposition to Plaintiffs' Motion to Amend the Complaint (Doc. No. 42-1) (Insurance Defendants' Reply"), the Fire Prevention Defendants filed the Declaration of Assistant Attorney General Stephanie Joy Calhoun (Doc. No. 43) ("Calhoun Reply Declaration"), and the Prosecuting Defendants filed the Amended Reply Declaration of

Florina Altshiler, Esq. (Doc. No. 44) ("Amended Altshiler Reply Declaration"), attaching exhibits A and B ("Prosecuting Defendants' Exh(s). __").  Oral argument was deemed unnecessary.

Based on the following, the Prosecuting Defendants' Motion should be GRANTED in part and DENIED in part; the Insurance Defendants' Motion should be GRANTED; Savage's Motion should be GRANTED insofar as it seeks to dismiss the Complaint for failure to state a claim and is DISMISSED as moot as to the alternative request for summary judgment; and the Fire Prevention Defendants' Motion should be GRANTED; Plaintiffs' Motion is GRANTED in part and DENIED in part.

## **FACTS**

Because the motions pending before the court include motions by various Defendants to dismiss for failure to state a claim, and Plaintiffs' crossmotion for leave to file an amended complaint alleging additional facts so as to avoid dismissal of the action, the court, in the interest of completeness and clarity, separately considers the facts of both the Complaint and the Proposed Amended Complaint, as well as facts found in a report prepared by an insurance investigator incorporated by reference into the Proposed Amended Complaint.

**The Complaint**

The facts as pleaded in the Complaint, although sparse, assert that on August 13, 2012, "Defendants began an arson investigation of the Plaintiffs herein arising from a fire loss that occurred on or about that date located at 158 Hamilton Street, Albion, New York."  Complaint ¶ 32.  Defendants appeared before an Orleans County grand

jury ("the Grand Jury")[2] and presented evidence resulting in an indictment on March 15, 2013 ("the Indictment"),[3] charging Plaintiffs with violations of New York Penal Law ("N.Y. Penal Law") § 150.10(1) (Arson in the Third Degree) ("the arson charge"), and § 145.00(1) (Criminal Mischief in the Fourth Degree) ("the criminal mischief charge") (together, "the criminal charges").  After the Indictment was returned, Plaintiffs were arrested on the charges and tried in Orleans County Court, before County Court Judge James P. Punch ("Judge Punch") ("the trial").  The trial commenced on November 12, 2013, and continued through November 22, 2013, when Judge Punch dismissed both charges against Harris[4] and the jury returned a verdict acquitting Wright on both charges.  Plaintiffs maintain that the investigation and prosecution damaged their personal and social reputations, as well as their business reputation and standing in the business community and that those involved in investigating the fire failed to thoroughly discern whether the fire was electrical in nature and not an arson.

**The Proposed Amended Complaint**

The Proposed Amended Complaint Plaintiffs seek leave to file provides more facts including that on March 13, 2012, Plaintiff Harris opened her own business, a novelty/smoke shop and second-hand clothing store ("the shop"), located at 158 Hamilton Street, in Albion, New York.  Proposed Amended Complaint ¶¶ 33-34.  The building in which the shop was located had recently been purchased and extensively renovated by Harris and her boyfriend, Plaintiff Wright, and Plaintiffs, in addition to their hard work and labor, invested $ 18,000 in the premises, $ 45,000 in inventory, $ 10,000

---

[2] Plaintiffs do not specify which Defendants appeared before the Grand Jury.
[3] Exh. A.
[4] Why the criminal charges were dismissed against Harris is not stated in the record.

in display cases, and $ 35,000 in "tattoo flash"[5] and artwork.  *Id.* ¶¶ 35-37.  On August

12, 2012, a fire ("the fire"), heavily damaged the shop and resulted in a total loss of its

inventory and contents.  *Id.* ¶¶ 38, 40.  Harris was notified of the fire by a customer, one

Amber M. Mesita ("Mesita"), who telephoned Plaintiff in the early morning of August 12,

2012.  Harris and Wright then "rushed" to the shop and were told by Mesita that she

informed Defendant Ablion Police Officer John Doyle ("Doyle"), who was the first police

officer to arrive at the scene of the fire, that Mesita smelled what she recognized as the

odor of an electrical fire.  *Id.* ¶ 45.  Doyle interviewed both Harris and Wright, preparing

written statements for their signatures, *id.* ¶ 46, but never recorded Mesita's observation

regarding the odor of an electrical fire.  *Id.* ¶ 47.  On August 13, 2012, Defendants

commenced an arson investigation of the fire ("the investigation").  Plaintiffs cooperated

with the investigation, including consenting to further interviews by insurance

investigators Defendants Paul Savage ("Savage") and Steve Nassivera ("Nassivera"),

and insurance adjuster Jennifer Holler ("Holler"),[6] as well as Defendants Albion Police

Officer Jeffrey Gifaldi ("Gifaldi") and Sergeant Joseph Fuller ("Fuller").  Proposed

Amended Complaint ¶¶ 48-50.  Defendant Donald Clawson ("Clawson"), who was

known in the community to have a psychiatric and criminal history, contacted the Albion

Police, the Orleans County Sheriff, and Defendant Hartford Insurance Company

("Hartford"), reporting that Wright burned down the shop, hoping to receive reward

money for reporting the arson.  *Id.* ¶¶ 51-53.  According to Plaintiffs, "the investigators

in this case were overcome by their eagerness and zeal of convicting Plaintiffs

---

[5] "Tattoo flash" refers to "common designs, usually drawn on paper or cardboard and displayed
prominently on the walls or in binders in tattoo shops."  What is Tattoo Flash?, available at
http://tattoo.about.com/od/tattoosartandphotoss/fl/What-is-Tattoo-Flash.htm , last visited September 9,
2015.
[6] Holler is not named as a Defendant in either the Complaint or in the Proposed Amended Complaint.

demonstrated by their conduct in selectively choosing evidence and ignoring blunt holes in their case." *Id.* ¶ 54. Plaintiffs assert that Clawson reported Wright started the fire in a red plastic bucket, despite Savage and Holter's conclusion that if the fire originated in the red plastic bucket, it would have been burnt beyond recognition. *Id.* ¶ 55. Plaintiffs allege Defendant Albion Fire Department Chief Rocco Sidari ("Sidari"), failed to hire an arson investigator to conduct a proper investigation of the fire and coached witnesses, including Albion Fire Department employee Jeremy Grahm ("Grahm"), and another, unidentified firefighter, to testify that "the fire appeared as if it were from an incendiary origin. . . ." *Id.* ¶¶ 57-59. Plaintiffs similarly assert Defendant police investigator Gifaldi, despite knowing Clawson's reputation, "cajoled" witnesses, including Defendants Adrian Park ("Park"), and Michael Jutrowski ("Jutrowski"), into testifying at trial against Plaintiffs with threats of jail. *Id.* ¶¶ 60-62. Plaintiffs' describe Park's trial testimony as informing the jury Gifaldi had forced her to testify against Plaintiffs, while Jutrowski testified Wright started the fire "by flipping a cigarette above the inflammable ceiling tiles," *id.* ¶¶ 63, which conflicted with Prosecuting Defendants' own investigation. *Id.* ¶ 64.

Harris's insurance company, Defendant Hartford, retained fire origin and cause investigation firm PT&C Forensic Consulting Services, P.A. ("PT&C"),[7] based in Atlanta, Georgia, to conduct a forensic investigation of the fire's origin and caused, which was conducted on August 15, 2012, by Savage, PT&C's Senior Fire & Explosion Consultant. Proposed Amended Complaint ¶ 65. In his report ("Investigative Report"), dated September 10, 2012, Savage, based on his investigation including three fire debris samples for which laboratory analysis revealed no accelerants present, concluded the fire originated along the rear wall of the shop's office, that the ignition source, the first

---

[7] PT&C is not named as a defendant to this action.

material ignited, and ignition sequence were all unknown, and the fire's "cause classification" was "undetermined with incendiary not eliminated." *Id.* ¶¶ 65-66. Although Gifaldi subsequently provided Savage with Defendant Niagara County Sheriff's Office Forensic Laboratory report ("Niagara County Forensic Laboratory Report"), indicating accelerants were present in one of two fire debris samples, consistent with a "medium petroleum distillate," such as mineral spirits, paint thinners, and charcoal starters, such findings did not change Savage's conclusion in the Investigative Report. *Id.* ¶ 67. Plaintiffs assert Gifaldi agreed with Savage's conclusion that the fire originated in the shop's rear office wall near Harris's desk, *id.* ¶ 68, yet Defendant Albion Police employees, including Doyle, Fuller, Gifaldi, and Hughes, failed to secure video footage from a security digital video recorder ("DVR"), which Plaintiffs maintain would have established Plaintiffs did not set the fire. *Id.* ¶ 71.

Plaintiffs assert Defendant Erik Holter ("Holter"), an investigator with Defendant Fire Prevention Office, failed to conduct a proper fire investigation to determine whether an electrical short caused the fire, and instead simply rubber-stamped Gifaldi's investigation despite its obvious short-comings. Proposed Amended Complaint ¶ 72. According to Plaintiffs, Nassivera intentionally misused tape recorded statements of Plaintiffs when testifying at the trial, interpreting inaudible portions of the audio recordings so as to slant the meaning against Plaintiffs. *Id.* ¶ 73. Gifaldi allegedly "interviewed witnesses of known doubtfulness," and provided false Grand Jury testimony to secure the Indictment, including stating the shop's security system and DVR were not operating at the time of the fire, and that Plaintiffs had purposefully shut off a fire alarm system which Plaintiffs maintain was abandoned by the shop's former

tenant.  *Id.* ¶ 74.  Gifaldi allegedly embellished his job title at the trial, claiming to be a

"Level II" arson investigator when no such designation exists, and also falsely testified

that he failed to take any contemporaneous hand written notes which were contradicted

by witnesses who reported observing Gifaldi taking notes.

**Fire Investigative Reports**

The Proposed Amended Complaint refers to both the Investigative Report

prepared by Savage and a supplement to the Investigative Report ("Supplemental

Report"), prepared by Savage regarding the Niagara County Forsenic Laboratory

Report.  In particular, Savage reported that Defendant Albion Police Department

("Albion Police"), initially listed the fire's cause as "undetermined pending further

investigation."  Investigative Report at 2.  According to Savage, although there was

smoke and heat damage throughout the shop, most of the shop's fire damage occurred

in the shop's office, particularly at the rear wall near Harris's desk and a large sofa.  *Id.*

at 3.  Wright's desk, located at the office's doorway, had less damage but the remains of

a medium sized red plastic trash can with "fire/melt damage" and which had "melted into

itself," was found in front of Wright's desk instead of in its regular location between

Harris's desk and the large sofa.  *Id.*  The caption to photo 52 accompanying the

Investigative Report ("Photo 52")[8] depicting the red plastic trash can states "[t]he red

trash can did not burn here, there is no corresponding fire damage to [Wright's][9] wood

desk.  This may have been moved/kicked around by fire department personal [*sic*]

during suppression. It should have been at the rear wall next to [Harris's] desk."

---

[8] Savage's Exh. 2-b (Doc. No. 30-7) at 26.
[9] Unless otherwise indicated, all bracketed material has been added.

Savage reported that close examination of the shop's rear entry door revealed a "very loose" striker plate that "was not loose from pry damage, but would have to [have] been loosened by unscrewing the two large metal/steel screws that hold it in place against the jamb."  Investigative Report at 3.  Because the loosened strike plate moved, the rear door hardware "plunger was not able to seat properly in the striker plate and could move easily."  *Id*.  Savage essentially ruled out the fire's cause as electrical as "[e]xamination of structural electrical conductors and receptacles showed no arc damage or any indication of being related to the cause of the fire."  *Id*.  A power strip on the floor near Harris's desk "sustained total fire damage" although Harris "stated it was not plugged in or being used."  *Id*.

Savage reported that in an on-scene interview Harris stated that on Sunday, March 11, 2012, she was in the shop's office at 11:00 P.M., reviewing bills and invoices while she waited for Wright to drive her home.  Investigative Report at 4.  Wright arrived around midnight and drove Harris to her home where they later received a telephone call notifying them the shop was on fire.  *Id*.  The fire had been extinguished by the time Plaintiffs returned to the shop, but the fire trucks remained on the scene.  Harris stated that "things were not too good with bills."  *Id*.

Savage also interviewed Wright who described helping Harris with the shop, receiving from his realtor ex-father-in-law household items and clothing from 'house clean outs' to be sold second-hand in the shop.  Savage Report at 4.  Wright stated he had received from a friend with a recent financial settlement two loans for the shop, the first for $ 20,000 and the second for $ 50,000.  *Id*.  Wright admitted the shop was behind on its bills.  *Id*.  Wright further stated he picked up Harris the night of the fire, setting the

alarm system and turning on a DVD recorder for outside cameras before leaving with Harris at midnight, taking their laptop computers with them. *Id.* Wright and Harris went to Harris's home where they fell asleep and were awoken by a telephone call informing them of the fire at the shop. *Id.* Wright stated they "had to find a ride so they could get back to the shop taking about 30 to 40 minutes." *Id.* Both Harris and Wright denied having a key to the shop's rear door, stating "it could be secured with a good slam shut." *Id.*

Savage concluded the fire originated along the rear wall of the store's office, that the fire's cause was "undetermined with incendiary not eliminated," and noting that no accelerants had been detected on any fire debris samples collected at the scene of the fire. Investigative Report at 4. In his report, Savage also commented that

> This fire is still being investigated by the Albion Police. Several pieces of interview information are not clear. Although the lab report is negative for ignitable/flammable liquids in the samples collected, this does not remove the possibility of manual open flame to paper or other combustibles. There are other issues with regards to the structure and with the insured's ability to drive away from the shop at closing yet needing to "find a ride" back to the scene.

*Id.* at 5.

In a supplemental letter report issued on November 7, 2012 ("Supplemental Report"),[10] Savage indicated Defendant Albion Police Detective Jeff Gifaldi ("Gifaldi") had advised of the discovery in the fire debris of an accelerant consistent with a medium petroleum distillate such as mineral oil, but that the discovery did not change Savage's conclusion and the fire's cause remained undetermined "with incendiary still not eliminated." Supplemental Report at 1.

---

[10] Savage's Exh. 5 (Doc. No. 31).

## DISCUSSION

Pending before the court are motions to dismiss filed by Prosecuting Defendants, Insurance Defendants, Defendant Savage, and Fire Prevention Defendants ("moving Defendants"). The other named Defendants to this action, including the Albion Fire Department, Rocco Sidari, Jeremy Grahm, Donald Clawson, Michael Jutrowski, Adriean Ann Park, and Nicholas Long (the non-moving Defendants"), have not moved to dismiss. In opposition to the motions to dismiss, Plaintiffs have moved for leave to file an amended complaint, but have not otherwise responded in opposition to the moving Defendants' arguments in support of dismissal.

### 1.    Insufficient Service of Process

Defendant Crime Task Force moves to dismiss the Complaint for insufficient service of Process based on Plaintiffs' failure to file the affidavit required under Fed.R.Civ.P. 4(l)(1) indicating service was made. Prosecuting Defendants' Memorandum at 4. A review of the docket, however, establishes an Affidavit of Process Server was filed on October 3, 2014 (Doc. No. 21-2), stating that on August 27, 2014, one Eric Harling, an Investigator with the Crime Task Force, was personally served with a copy of the summons and verified Complaint. Accordingly, Prosecuting Defendants' Motion should be DENIED insofar as they seek dismissal of the action as against the Crime Task Force for insufficient service of process. [11]

### 2.    Motion to Dismiss

Pending before the court are four motions to dismiss the Complaint filed by the Prosecuting Defendants, the Insurance Defendants, Savage, and the Fire Prevention

---

[11] Inasmuch as the Crime Task Force is not a suable entity, *see* Discussion, *infra*, at 17-18, the action should be dismissed as to this Defendant, and the issue of service on the Crime Task Force, the manner of which Prosecuting Defendants do not challenge, is academic.

Defendants.  On a motion to dismiss under Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"), the

court looks to the four corners of the complaint and is required to accept the plaintiff's

allegations as true and to construe those allegations in the light most favorable to the

plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Goldstein v. Pataki*, 516 F.3d

50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept as true

all factual allegations in the complaint, and draw all reasonable inferences in the

plaintiff's favor).  The Supreme Court requires application of "a 'plausibility standard,'

which is guided by '[t]wo working principles.'"  *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir.

2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and quoting *Ashcroft

v. Iqbal*, 556 U.S. 662, 678 (2009)).  "First, although 'a court must accept as true all of

the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal

conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice.'"  *Harris*, 572 F.3d at 72 (quoting *Iqbal*,

556 U.S. at 678).  "'Second, only a complaint that states a plausible claim for relief

survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible

claim for relief will . . . be a context-specific task that requires the reviewing court to

draw on its judicial experience and common sense.'"  *Id.* (quoting *Iqbal*, 556 U.S. at

679).

        "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*,

556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim will have 'facial

plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.'"  *Sykes v.*

*Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Ashcroft*, 556 U.S. at 678);

*see Twombly*, 550 U.S. at 570 (the complaint must plead "enough facts to state a claim

to relief that is plausible on its face").  The factual allegations of the complaint "must be

enough to raise a right to relief above the speculative level on the assumption that all

the allegations in the complaint are true."  *Twombly*, 550 U.S. at 570.  "'In adjudicating a

motion to dismiss, a court may consider only the complaint, any written instrument

attached, and any document upon which the complaint heavily relies.'"  *ASARCO LLC

v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014) (quoting *In re Thelen LLP*, 736 F.3d 213,

219 (2d Cir. 2013)).

In the instant case, a thorough review of the Complaint establishes it fails to state

any viable claim against Prosecuting Defendants, Insurance Defendants, Savage, and

Fire Prevention Defendants.

### A. Capacity to be Sued

Preliminarily, the court addresses the Prosecuting Defendants' argument,

Prosecuting Defendants' Memorandum at 2-4, that the Orleans County Sheriff, the

Crime Task Force, the Albion Police, and the Niagara County Sheriff lack the capacity

to be sued, requiring dismissal of the Complaint as against them.  Plaintiffs have not

responded in opposition to this argument, nor have Prosecuting Defendants argued in

further support of the argument.

The "[c]apacity to sue or be sued is determined . . . by the law of the state where

the court is located," Fed.R.Civ.P. 17(b), here, the law of New York which, as relevant,

provides that a "municipal corporation" may sue or be sued.  N.Y. General Municipal

Law ("N.Y. Gen.Mun. Law") § 50.  Further, a "municipal corporation," as defined, "includes only a county, town, city and village."  N.Y. Gen. Mun. Law § 2.

An administrative arm of a municipal corporation, however, does not exist separate and apart from the municipality and does not have its own legal identity. *Laboy v. Ontario County, N.Y.*, __ F.Supp.3d __; 2015 WL 1977251, at * 6 (W.D.N.Y. May 4, 2015).  In the instant case, the Orleans County Sheriff and the Crime Task Force are administrative arms of Orleans County, the Albion Police is an administrative arm of the Village of Albion, and the Niagara County Sheriff is an administrative arm of the County of Niagara.  *See Phillips v. Cortland City Police*, 2013 WL 5462951, at * 2 (N.D.N.Y. Sept. 30, 2013) ("Because the Defendant Police Department is an administrative arm of the City of Cortland, it lacks the capacity to be sued."); *McKenzie v. County of Erie*, 2013 WL 5348084, at * 2 (W.D.N.Y. Sept. 23, 2013) (dismissing claims against various Erie County departments, including the Erie County Sheriff's Department, the Erie County Holding Center, the Erie County Department of Health, and the Erie County Department of Mental Health, as each such department "is merely an administrative arm of the County, and they therefore lack the capacity to be sued."). As such, the Orleans County Sheriff, the Crime Task Force, the Albion Police, and the Niagara County Sheriff cannot sue or be sued.  *Id.*  Accordingly, the Prosecuting Defendants' Motion should be GRANTED as to all claims set forth in the Complaint against the Orleans County Sheriff, the Crime Task Force, the Albion Police, and the Niagara County Sheriff.[12]

### B.  Niagara County Sheriff

---

[12] Fire Prevention Defendants did not similarly argue in support of dismissal that the Fire Prevention Office also, as an administrative arm of the state, similarly lacks the capacity to be sued.

Prosecuting Defendants also seeks dismissal of the malicious prosecution and negligence claims against Niagara County Sheriff for failing to plead any facts indicating the Niagara County Sheriff was involved in the criminal prosecution against Plaintiffs, which occurred in Orleans County. Prosecuting Defendants' Memorandum at 10-11. Plaintiffs have not responded in opposition to this argument.

A thorough reading of the Complaint reveals no factual allegations against Niagara County Sheriff. Further, the Complaint indicates that the criminal prosecution of which Plaintiffs complain occurred in Orleans County where the shop is located. The Complaint thus fails to state any viable claim against Niagara County Sheriff.

Prosecuting Defendants' Motion should thus be GRANTED as to Niagara County Sheriff.

### C.    Civil Rights Claims

The Prosecuting Defendants are alleged in the fourth claim pursuant to § 1983 to have violated Plaintiffs' civil rights. Complaint ¶¶ 70-75. An individual may seek damages against any person who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States. 42 U.S.C. § 1983. Under § 1983 an action is permitted "against a 'person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting 42 U.S.C. § 1983). Section § 1983, however, "'is not itself a source of substantive rights.'" *Id.* (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).

Rather, § 1983 "merely provides 'a method for vindicating federal rights elsewhere conferred. . . .'" *Id.* The elements of a § 1983 claim include (1) the deprivation of a federal constitutional or statutory right, (2) by a person acting under color of state law. *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005). Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and *Baker*, 443 U.S. at 140).

In the instant case, Plaintiffs allege Prosecuting Defendants subjected them to unlawful arrest, malicious prosecution, and denial of a fair trial in violation of their Fourth, Fifth, Sixth and Fourteenth Amendment rights.

### D. False Arrest and Malicious Prosecution Claims

Plaintiffs assert claims for false arrest and malicious prosecution under both New York common law and § 1983. Complaint ¶¶ 43-52 (New York common law false arrest); 53-61 (New York common law malicious prosecution); and 70-75 (§ 1983 false arrest and malicious prosecution). The common law false arrest claim and the civil rights claim are asserted only against some of the Prosecuting Defendants, including the Orleans County Sheriff, the Crime Task Force, and the Albion Police Department, whereas the common law malicious prosecution claim is asserted against all Prosecuting Defendants, Defendant Savage, the Insurance Defendants, and the Fire Prevention Defendants, as well as against the non-moving Defendants. As discussed below, the existence of probable cause, as evidenced by the Indictment, requires the dismissal of these claims.

Plaintiffs' first claim is a New York tort claim for false arrest. Complaint ¶¶ 43-52. "Under New York law, a plaintiff claiming false arrest must show, *inter alia*, that the

defendant intentionally confined him without his consent and without justification." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citing *Broughton v. State*, 335 N.E.2d 310, 313-14 (N.Y.), *cert. denied*, 423 U.S. 929 (1975)).  The elements of a false arrest claim under New York law include that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citing *Benjamin v. United States,* 554 F.Supp. 82, 85 (E.D.N.Y.1982)).

Plaintiffs' second claim is for malicious prosecution in violation of New York common law.  Complaint ¶¶ 53-61.  "To establish a malicious prosecution claim under New York Law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against the plaintiff; (2) the termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (internal quotation marks and citations omitted).

The fourth claim alleges both false arrest and malicious prosecution in violation of § 1983.  Complaint ¶¶ 70-75.  The same false arrest and malicious prosecution claims Plaintiffs bring under New York common law may be brought under § 1983 because such claims invoke the Fourth Amendment's protection of an individual's liberty interest with respect to criminal prosecutions. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 115-16 (2d Cir. 1995) (Fourth Amendment is the source of § 1983 claims for malicious prosecution and false arrest).

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law. *Weyant*, 101 F.3d at 852. "In analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006) (internal quotation marks omitted). Similarly, "[a] § 1983 claim for malicious prosecution looks to the relevant state common law." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 162 (2d Cir. 2013) (citing *Janetka v. Dabe*, 892 F.2d 187, 189 (2d Cir. 1989)). Under New York law, a plaintiff must show that the underlying proceeding was terminated in his favor to make out a malicious prosecution claim. *Id.* "'Where the prosecution did not result in an acquittal, it is deemed to have ended in favor of the accused, for these purposes, only when its final disposition is such as to indicate the innocence of the accused.'" *Id.* (quoting *Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997)).

As stated, Background, *supra*, at 4, Plaintiffs allege New York common law claims for false arrest and malicious prosecution, as well as § 1983 claims based on false arrest, malicious prosecution, and denial of a fair trial. The existence of probable cause for the arrest and malicious prosecution of Plaintiffs, however, is a complete defense to Plaintiffs' common law false arrest and malicious prosecution claims, as well as Plaintiffs' § 1983 false arrest and malicious prosecution claims. *See Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010) (probable cause is complete defense to malicious prosecution claim in violation of New York common law and § 1983); *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006) ("Under New York law, the

existence of probable cause is an absolute defense to a false arrest claim."); (*Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (probable cause is complete defense to false arrest in violation of civil rights claim).

Further, an indictment by a grand jury establishes a rebuttable presumption of probable cause.[13] *Manganiello*, 612 F.3d at 162 (citing *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)). The presumption of probable cause "may be rebutted only 'by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.''" *Manganiello*, 612 F.3d at 162 (quoting *Savino*, 331 F.3d at 72 (quoting *Colon v. City of New York*, 455 N.E.2d 1248, 1251 (N.Y. 1983))). Where there is some indication in the police records that, as to a fact crucial to the existence of probable cause, the arresting officers may have 'lied in order to secure an indictment,' and 'a jury could reasonably find that the indictment was secured through bad faith or perjury,' the presumption of probable cause created by the indictment may be overcome." *Id.* (quoting *Boyd v. City of New York*, 336 F.3d 72, 77 (2d Cir. 2003)). "'Like a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable 'corruption of the truth-seeking function of the trial process.''" *Id.* (quoting *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 130 (2d Cir. 1997) (quoting *United States v. Agurs*, 427 U.S. 97, 104 (1976))).

---

[13] Although an indictment subsequent to an arrest does not give rise to a presumption of probable cause to defeat a false arrest claim, *Broughton v. State*, 335 N.E.2d 310, 313 (N.Y. 1975) (holding arraignment and subsequent indictment of defendant did not generate presumption of probable cause to support arrest), in the instant case, according to the Complaint, Plaintiffs were indicted prior to the arrest. Complaint ¶ 39 ("as a result of said indictment the Plaintiffs were both arrested and deprived of their liberty . . . ."). An arrest is privileged if based on probable cause in accord with the fourth element under New York law. *See Bernard*, 25 F.3d at 102 (affirming district court's grant of summary judgment in favor of government on plaintiff's false arrest claim where the only element in dispute, *i.e.*, that the confinement was privileged, was established by the existence of probable cause to support the arrest).

Nevertheless, "probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citing *Colon v. City of New York,* 455 N.E.2d 1248 (N.Y. 1983). Further, "that plaintiff was ultimately acquitted after trial does not negate the existence of probable cause [rebutting the presumption of probable cause afforded by the indictment]." *Nadal v. City of New York*, 964 N.Y.S.2d 100, 101 (1st Dept. 2013) (citing *Jenkins v. City of New York*, 770 N.Y.S.2d 22, 24 (1st Dept. 2003) ("Despite plaintiff's subsequent acquittal, there was nonetheless probable cause for the arresting officers' actions.")).

In the instant case, the Indictment returned by the Orleans County Grand Jury on March 15, 2013, establishes the requisite probable cause to extinguish Plaintiffs' common law false arrest and malicious prosecution claims, as well as Plaintiffs' § 1983 claims based on false arrest and malicious prosecution. Significantly, Plaintiffs do not allege in the Complaint any facts which, if true, would establish that the Indictment was secured through bad faith or perjury by persons acting under color of state law, such as law enforcement officers, so as to rebut the presumption of probable cause supporting the Indictment, and a plain reading of the Complaint reveals no allegations to that effect.

Accordingly, Plaintiffs' New York common law claims for false arrest and malicious prosecution, as well as the § 1983 claim for false arrest and malicious prosecution fail to state a claim for which relief could be granted and the motions to dismiss should be GRANTED as to these claims.

    **E.**    **Fair Trial**

Insofar as Plaintiffs' civil rights claim can be construed as alleging a violation of their right to a fair trial, *see* Complaint ¶ 33 (alleging unspecificed Defendants appeared before the Grand Jury and intentionally or negligently misrepresented and falsified facts and evidence); ¶ 34 (alleging unspecified Defendants presented false, fraudulent and perjured testimony to the Grand Jury and at trial); and ¶ 73 (alleging violations of, *inter alia*, Plaintiffs' Fifth, Sixth, and Fourteenth Amendments), the Complaint may be liberally construed as asserting a denial of the fundamental right to a fair trial which must be dismissed for failure to state a claim. *See Bertuglia v. City of New York*, 839 F.Supp.2d 703, 723 (S.D.N.Y. 2012) ("'Pursuant to § 1983 and prevailing case law, denial of a right to a fair trial is a separate and distinct cause of action.'" (quoting *Nibbs v. City of New York*, 800 F.Supp.2d 574, 575 (S.D.N.Y. 2011))).

"The Constitution guarantees a fair trial through the Due Process Clauses [of the Fifth and Fourteenth Amendments], but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment . . . ." *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984) (analyzing habeas petition asserting denial of fair trial based on violation of right to counsel under Sixth Amendment). Specifically, "the due process analysis is basically the same under both the Fifth and Fourteenth Amendments." *Chew v. Dietrich*, 143 F.3d 24, 28 n. 4 (2d Cir. 1998). "[T]he [Supreme] Court has held that the due process clause of the Fifth Amendment prohibits federal action if the same action taken by a state would be proscribed under the Fourteenth Amendment." *United States Postal Service v. Brennan*, 574 F.2d 712, 717 n. 10 (2d Cir. 1978) (citing *Bolling v. Sharpe*, 347 U.S. 497 (1954)). Here, however, Plaintiffs challenge only actions allegedly taken by Defendants under New York law and, as such,

Plaintiffs allege only a violation of the Fourteenth Amendment, rather than the Fifth Amendment.  The Complaint thus fails to state any § 1983 claim based on a violation of the Fifth Amendment.

Although a due process violation, including denial of the right to a fair trial, can be established by demonstrating that state action deprived Plaintiffs of a property or liberty interest protected by the Fourteenth Amendment,  *Velez*, 401 F.3d at 85, the Fourteenth Amendment is relevant to Plaintiffs' fair trial claim only insofar as the Fourteenth Amendment's Due Process Clause make the Sixth Amendment applicable to Defendants as state actors.  *See Tennesee v. Lane*, 541 U.S. 509, 523 (2004) (recognizing the Sixth Amendment applies to the states via the Fourteenth Amendment).  Further, "[w]here a particular Amendment provides an explicit textural source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  *Albright v. Oliver*, 510 U.S. 266, 273 (1994).  Accordingly, because the Sixth Amendment provides the "explicit source of constitutional behavior" for Plaintiffs' fair trial claim, the claim cannot be analyzed under the Fourteenth Amendment.

> The Sixth Amendment provides
>
> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

U.S. Const. Amend. 6.

Further, that the government must prove the elements of the charged crime beyond a reasonable doubt "is a requirement and a safeguard of due process of law in the historic, procedural content of 'due process.'" *In re Winship*, 397 U.S. 358, 362 (1970) (quoting *Leland v. Oregon*, 343 U.S. 790, 802-03) (1952) (Frankfurter, J., dissenting)).

"It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of the false evidence fabricated by a government officer." *Zahrey v. Coffey*, 221 F.3d 342, 355 (2d Cir. 2000). "Such a claim based on fabrication of evidence may be properly pled where a plaintiff alleges that defendants fabricated evidence, which was likely to influence a jury's decision, and forwarded it to prosecutors." *McHenry v. Bell*, 2015 WL 2354438, at *8 (N.D.N.Y. May 15, 2015) (citing *Bertuglia*, 839 F.Supp.2d at 724; and *Ricciuti*, 124 F.3d at 130). "'The constitutional right in question is the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity . . . provided that the deprivation of liberty . . . can be shown to be the result of the [officer's] fabrication of evidence." *Id.* (internal quotation marks and citations omitted). "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial. . . ." *Ricciuti*, 124 F.3d at 130. Further, "[i]t has long been established that a prosecutor who knowingly uses false evidence at trial to obtain a conviction acts unconstitutionally." *Zahrey*, 221 F.3d at 355.

In the instant case, although Plaintiffs allege unidentified Defendants presented falsified information to the Grand Jury as well as at trial, the failure to specify what constituted the allegedly falsified information is fatal to Plaintiffs' fair trial claim. Nor

does Plaintiffs' assertion, Complaint ¶ 35, that exculpatory evidence was withheld from the Grand Jury require a different result because the prosecutor is not required to disclose to the grand jury "substantial exculpatory evidence" in its possession. *United States v. Williams*, 504 U.S. 36, 51-55 (1992) ("requiring the prosecutor to present exculpatory as well as inculpatory evidence would alter the grand jury's historical role, transforming it from an accusatory to an adjudicatory body."). Here, none of the individual moving Defendants are alleged by Plaintiffs to have acted in a manner by which Plaintiffs' trial was unfairly compromised.

Accordingly, the motions to dismiss should be GRANTED insofar as Plaintiffs' claim they were denied a fair trial by any named Defendant.

### F. Personal Involvement

Prosecuting Defendants and Insurance Defendants argue in support of dismissal that Plaintiffs' have failed to allege the requisite personal involvement of individual Defendants in the asserted claims, relying instead on "group pleading" allegations which are insufficient to put the Defendants on notice as to the claims asserted against them and thus fail to comport with Fed.R.Civ.P. 8 ("Rule 8"). Prosecuting Defendants' Memorandum at 6-8; Insurance Defendants' Memorandum at 5-6. Fire Prevention Defendants argue the Complaint fails to allege any of the Fire Prevention Defendants were personally involved in the asserted unlawful conduct. Fire Prevention Defendants' Memorandum at 5-6.

"'It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Spavone v. New York State Dept. of Correctional Services*, 719 F.3d 127, 135

(2d Cir. 2013) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Pleadings that fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim. *See*, *e.g.*, *Holmes v. Allstate Corp.*, 2012 WL 627238, at ** 7 and 22 (S.D.N.Y. Jan. 27, 2012) (commenting that "[p]laintiffs' method of group pleading is incoherent or illogical" and "Rule 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it." (citing *Pierson v. Orlando Regional Healthcare Systems, Inc.*, 619 F.Supp.2d 1260, 1273 (M.D.Fla. 2009) (dismissing complaint because group-pleading method of collectively referring to individual defendants and two physician groups as "Peer Review Defendants" throughout complaint did not satisfy the "fair notice" requirement of Rule 8))); *Zurich American Ins. Co. v. Dah Sing Bank, Ltd.*, 2004 WL 1328215, at *6 (S.D.N.Y. June 15, 2004) (dismissing complaint as against one defendant bank against whom not "a single factual allegation" was made but, rather, "lumps the three bank defendants together and asserts that they collectively processed the checks."). Such "group pleading" is insufficient for purposes of Rule 8(a)(2) which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Iqbal*, 566 U.S. at 678 ("the pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." (citations and quotation marks omitted)).

Here, Plaintiffs' failure to specify against which moving Defendants their claims are asserted requires dismissal of Plaintiffs' claims as to those Defendants.

### G. Supervisory Liability

Plaintiffs' third claim alleges supervisory liability under § 1983 and New York law against Defendants Orleans County, the Town, the Village, the Orleans County Sheriff, the Crime Task Force, the Fire Prevention Office, the Niagara County Sheriff, Hartford, and Sentinel for negligent hiring, supervision, and retention.  Complaint ¶¶ 62-69.

### 1.    § 1983

Supervisory liability under § 1983

> can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

There can be no supervisory liability for gross negligence of a subordinate, however, unless the subordinate has actually violated a plaintiff's constitutional rights. *Raspardo v. Carlone*, 770 F.3d 97, 123 (2d Cir. 2014) (citing *Poe v. Leonard*, 282 F.3d 123, 134 (2d Cir. 2002) (holding a supervisor may not be held liable under § 1983 for acts of a subordinate unless both the subordinate's violation of the plaintiff's rights and the supervisory liability doctrine under which the plaintiff wishes to hold the supervisor liable are clearly established).  *See also Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999) ("Of course, for a supervisor to be liable under Section 1983, there must have been an underlying constitutional deprivation."); *Elek v. Inc. Village of Monroe*, 815 F.Supp.2d 801, 808 (S.D.N.Y. 2011) (where the plaintiff "has not established any underlying constitutional violation, [the plaintiff] cannot state a claim for § 1983

supervisory liability.").  In the instant case, because Plaintiff has failed to state any constitutional deprivation claim against any individual Defendant, there is no basis for any claim for supervisory liability as against Defendants Orleans County, Orleans County Sheriff, the Village, the Town, and Niagara County Sheriff.

Alternatively, assuming, *arguendo*, Plaintiff had stated an underlying § 1983 claim against an individual Defendant, "supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*." *Hernandez*, 341 F.3d at 144 (citing *Al-Jundi v. Estate of Rockfeller*, 885 F.2d 1060, 1065 (2d Cir. 1989)).  "'Absent some personal involvement by [the supervisory official] in the allegedly unlawful conduct of his subordinates,' he cannot be liable under section 1983.'" *Id.* at 144-45 (quoting *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987)).  Even an imperfect investigation, without more, does not give rise to a constitutional violation. *Friedman v. New York City Admin. for Children's Services*, 502 Fed.Appx. 23, 27 (2d Cir. Nov. 6, 2012) (citing *Wilkinson v. Russell*, 182 F.3d 89, 106 (2d Cir. 1999)).

A plaintiff, however, "'cannot base liability solely on [a defendant's] supervisory capacity or the fact that he held the highest position of authority' within the relevant governmental agency or department." *Houghton v. Cardone*, 295 F.Supp.2d 268, 276 (W.D.N.Y. 2003) (quoting *Burgess v. Morse*, 259 F.Supp.2d 240, 248 (W.D.N.Y. 2003)). Simply put, "the conclusory assertion that a supervisory official was personally involved in the deprivation of constitutional rights, without support factual allegations, is not sufficient to state a claim under § 1983." *Roberites v. Huff*, 2012 WL 1113479, at * 6 (W.D.N.Y. Mar. 30, 2012).

Here, Plaintiffs merely allege that Defendants Orleans County, the Town, the Village, the Orleans County Sheriff, the Crime Task Force, the Fire Prevention Office, the Niagara County Sheriff, Hartford, and Sentinel "were grossly negligent in training and supervising the individual [*sic*] named defendant officers who arrested the Plaintiff and fabricated false charges against them with malice, with respect to the proper exercise of their police powers in a manner consistent with the Fourth and Fourteenth Amendments to the Constitution of the United States, and with the relevant provisions of the Constitution of the State of New York," Complaint ¶ 66, that "the negligence of the defendants in the aforesaid respects was so gross as to constitute deliberate indifference to the rights of the Plaintiff[s], *id.* ¶ 67, and that such Defendants "are vicariously liable to the Plaintiff for the actions of their employees . . . ." *Id.* ¶ 68. There are, however, no facts alleged to support these conclusory allegations. *See Otis-Wisher v. Medtronic, Inc.*, __ Fed.Appx. __, 2015 WL 3557011, at * 2 (2d Cir. June 9, 2015) (conclusory allegations do not satisfy plausibility requirement under *Iqbal*). As such, the Complaint fails to state a claim for supervisory liability as against Defendants Orleans County, the Town, the Village, the Orleans County Sheriff, the Crime Task Force, the Fire Prevention Office, the Niagara County Sheriff, Hartford, and Sentinel.

### 2. New York Common Law

Plaintiffs' negligent hiring, supervision and retention claim is also alleged under New York Law against Orleans County, the Town, the Village, Albion Police Department, Orleans County Sheriff, the Crime Task Force, the Fire Prevention Office, Niagara County Sheriff, Hartford, and Sentinel. Complaint ¶ 66. "Under New York law, a claim for negligent hiring, supervision or retention, 'in addition to the standard

elements of negligence,' requires 'a plaintiff [to] show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels.''" *Bouchard v. New York Archdiocese*, 719 F.Supp.2d 255, 261 (S.D.N.Y. 2010) (quoting *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (quoting *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 654 N.Y.S.2d 791, 792 (2d Dept. 1997)). Here, Plaintiffs have failed to plead any of these elements.

With regard to the first element, Plaintiffs have failed to allege that any of the individually named moving Defendants were in an employee-employer relationship with any of the other moving Defendants in a supervisory capacity. For example, none of the individually sued police officers, *i.e.*, Doyle, Fuller, Gifaldi, or Hughes, is alleged to be an employee of any of the sued municipal Defendants. Nor, have Plaintiffs alleged any facts establishing any supervisory Defendant knew or should have known that any employee named as a Defendant had a propensity for the alleged unlawful conduct. Finally, there is no allegation that any tort was committed on any supervisory Defendant's property or with such Defendant's chattels. Accordingly, Plaintiffs' have failed to allege a claim for negligent hiring, supervision or retention under New York law.

The Motions to Dismiss should be GRANTED as to Plaintiffs' Third Claim alleging supervisory liability.

### H.    Municipal Liability

With regard to the claims against Orleans County, the Town, and the Village, it is settled that municipalities may not be held liable under § 1983 solely on the basis of *respondeat superior* unless the alleged "deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978)). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its employee." *Id.* "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Board of Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997). As such, municipal liability may be found "when the execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible for under § 1983." *Monell*, 436 U.S. at 691.

Here, Plaintiffs have not alleged that the Town, Village, or Orleans County maintained any policy pursuant to which Plaintiffs allegedly were subjected to false arrest and malicious prosecution or denial of a fair trial. Nor do Plaintiffs claim such moving Defendants routinely disregard any applicable policy in making arrests or conducting criminal prosecutions. Accordingly, insofar as Plaintiffs assert claims based on *respondeat superior* against the Town, Village and County, such claims must be dismissed.

## I.    Statutory Immunity

The Insurance Defendants assert statutory immunity insofar as Plaintiffs' claims are based on the release of information relative to the fire investigation.  Insurance Defendants' Memorandum at 8.  As relevant, New York Insurance Law ("N.Y. Ins. Law") § 319 ("§ 319"), provides that

> Each insurer authorized to issue policies covering losses incurred to personal or real property through fire shall contact the appropriate law enforcement agency and release information in its possession resulting from an investigation conducted by it pertaining to any such fire loss, should the insurer be of the opinion that the fire was caused by other than accidental means.

N.Y. Ins. Law § 319(b).

Significantly, insurance providers are granted immunity for all conduct under § 319 pursuant to N.Y. Ins. Law § 3432 ("§ 3432"), which provides

> In the absence of fraud or bad faith, there shall be no liability on the part of, and no cause of action of any nature shall arise against, an insurer . . . or any person acting on their behalf with respect to obligations and duties performed pursuant to the sections referred to in subsection (b) hereof.

N.Y. Ins. Law § 3432(a).

As relevant, such civil or criminal "immunity shall apply to * * * information, reports, assistance in investigations, notification, made in the absence of fraud or bad faith, to any authorized law enforcement agency" pursuant to § 319.  N.Y. Ins. Law § 3432(b)(4).  Significantly, the Complaint is devoid of any allegation that any of the Insurance Defendants engaged in any fraud or bad faith so as to render the statutory immunity inapplicable.  The Complaint thus fails to state a claim against the Insurance Defendants.

## J.    Defendant Savage

Savage is a defendant only to Plaintiffs' New York common law malicious prosecution claim.  Complaint ¶ 54.  As discussed, Discussion, *supra*, at 22-24 (citing

caselaw), the existence of probable cause, a required element of a malicious

prosecution claim under New York law for which the Indictment creates a rebuttable

presumption, is fatal to this claim.  Furthermore, the Complaint is devoid of any factual

allegations pertaining to Savage and, as such, falls far short of pleading the requisite

malice for a malicious prosecution claim. The Complaint thus fails to state any claim

against Savage whose motion to dismiss should be GRANTED.

### K.      Non-Moving Defendants

As stated, Discussion, *supra*, at 15, the other named Defendants to this action,

including the Albion Fire Department, Rocco Sidari, Jeremy Grahm, Donald Clawson,

Michael Jutrowski, Adriean Ann Park, and Nicholas Long, have not moved to dismiss

the Complaint for failure to state a claim, and the court therefore expresses no opinion

as to whether the claims asserted against the non-moving Defendants are viable.  *See*

*Grant v. County of Erie*, 542 Fed.Appx. 21, 24 (2d Cir. Oct. 17, 2013) (reversing district

court's *sua sponte* dismissal of action for failure to state a claim based on failure to

provide plaintiff with notice of the grounds for dismissal and an opportunity to be heard).

### L.      Dismissal with Prejudice

The moving Defendants seek dismissal of the Complaint with prejudice.  *See*

Insurance Defendants' Motion at 2 (seeking as relief "an order dismissing the action in

its entirety as to [Insurance Defendants]"); Fire Prevention Defendants' Memorandum at

7; Altshiler Reply Declaration ¶¶ 5-6 (asserting probable cause requires dismissal of

claims in their entirety); and Savage Reply at 2 (requesting dismissal with prejudice).

Generally, the court "should not dismiss without granting leave to amend at least once

when a liberal reading of the complaint gives any indication that a valid claim might be

stated." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991). Nevertheless, where further amendment of the complaint would be futile, dismissal of the complaint with prejudice to filing an amended complaint is not an abuse of discretion. *See Van Buskirk v. the New York Times Co.*, 325 F.3d 87, 92 (2d Cir. 2003) (affirming district court's dismissal of complaint with prejudice for failure to state a claim where amendment of complaint would have been futile).

In the instant case, the futility of permitting Plaintiffs to file an Amended Complaint is discussed below. Discussion, *infra*, at 37-49. Accordingly, based on that analysis, the Motions to Dismiss for failure to state a claim should be GRANTED as to Prosecuting Defendants, the Insurance Defendants, Savage, and the Fire Prevention Defendants against whom the Complaint should be DISMISSED with prejudice.

**3.      Motion to Amend**

In opposing moving Defendants motions to dismiss, Plaintiffs move for leave to file an amended complaint which Plaintiffs assert should be granted because the "more detailed description of the Defendants [*sic*] culpable conduct is provided in the [Proposed] Amended Complaint apprising each defendant of its specific acts and omissions presented in this litigation and will provide judicial economy for the Court and litigants." Plaintiffs' Memorandum at 11. Plaintiffs further argue that should leave to amend be granted, Defendants will not suffer any substantial prejudice, nor is Plaintiff's Motion brought for undue delay, in bad faith, or for any dilatory motive. *Id.* at 11-12. Moving Defendants argue in opposition that Plaintiffs' Proposed Amended Complaint fails to cure the deficiencies in the Complaint such that Plaintiffs' Motion is futile and should be denied. In particular, Prosecuting Defendants argue that the Proposed

37

Amended Complaint fails to allege facts rebutting the presumption of probable cause attributed to the Indictment and truncating the false arrest and malicious prosecution claims against the Prosecuting Defendants, and also fails to allege facts supporting any claim for negligent hiring, supervision or retention, Altshiler Reply Declaration ¶¶ 4-6; Amended  Altshiler Reply Declaration ¶¶ 8-10, and that insofar as Plaintiffs seek to allege Defendant Gifaldi "testified falsely" and "vaguely allege that 'defendants [*sic*] own investigation proved their testimony would be false,'" Amended Altshiler Reply Declaration ¶ 4, witnesses, including law enforcement officials, are absolutely immune from liability for testimony, even if such testimony is perjured. *Id.* ¶¶ 5-6.  Defendant Savage argues in opposition to Plaintiffs' Motion that the Proposed Amended Complaint is devoid of any allegation of wrongdoing against Savage and contains only an admission that Savage committed no tort.  Savage Reply at 3-4.  In opposition to Plaintiffs' Motion, Insurance Defendants argue the Proposed Amended Complaint fails to cure any of the group-pleading and vagueness deficiencies of the Complaint, Insurance Defendants' Reply at 3-4, also fails to address Insurance Defendants' statutory immunity under New York law, *id.* at 4, and thus is futile.  *Id.* at 4-7.  The Fire Prevention Defendants argue in opposition to Plaintiffs' Motion that the Proposed Amended Complaint fails to allege any involvement by Defendant Shadic with the fire investigation and subsequent prosecution, Calhoun Reply Declaration ¶¶ 6-8, alleges only that Defendant Holter was involved in the fire investigation, *id.* ¶ 9, and did not conduct a proper arson investigation but instead "rubber-stamped" Gifaldi's investigation which fails to allege the malice required for a malicious prosecution.  *Id.* ¶ 10.  Fire Prevention Defendants further argue that Proposed Amended Complaint's lack of any

allegation that Shadic or Holter was personally involved in any constitutional deprivation against Plaintiffs also precludes any supervisory liability claim against Defendant Fire Prevention Office.

Under Fed.R.Civ.P. 15(a), leave to amend "shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Burns v. Imagine Films Entertainment, Inc.*, 165 F.R.D. 381, 384 (W.D.N.Y. 1996) (quoting Fed.R.Civ.P. 15(a)). Therefore, "an amended pleading may be filed pursuant to Rule 15(a) where the new allegations do not unduly prejudice an opponent, are not the result of undue delay or bad faith, and are not futile." *Warren v. Goord*, 2006 WL 1582385, at * 7 (W.D.N.Y. May 26, 2006). Further, "[a]n amendment to a pleading is futile if it could not withstand a motion to dismiss under Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). In ruling on a motion under Rule 12(b)(6), and, thus, in considering the plausibility of a proposed amended pleading, the court may consider only "the fact as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated into the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). Here, Defendant Savage filed in support of his motion to dismiss[14] exhibits, including copies of the Investigative Report and its accompanying photographs, as well as the Supplementary Report, both of which the court may consider because Plaintiffs have referenced them in their Proposed Amended Complaint. *See Avon Pension Fund v. GlaxoSmithKline PLC*, 343 Fed.Appx. 671, * 3 n. 2 (2d Cir. Aug. 24, 2009) (considering, on motion seeking leave to file amended

---

[14] Savage moved, in the alternative, for summary judgment. Based on the court's recommendation that the Complaint be dismissed as to Savage, Savage's alternative motion for summary judgment is DISMISSED as moot.

complaint filed in opposition to motion to dismiss complaint, the transcript of physician's testimony not attached to proposed amended complaint but incorporated by reference).

In the instant case, moving Defendants do not argue that permitting Plaintiffs to file an amended complaint will result in any undue prejudice, undue delay, or bad faith; rather, moving Defendants maintain that Plaintiffs' Motion should be denied on the ground of futility because the Proposed Amended Complaint, like the Complaint, fails to state a claim for which relief can be granted. Here, a thorough reading of the Proposed Amended Complaint establishes that it fails to cure the defects of the Complaint, such that Plaintiffs' Motion should be denied as to the Prosecuting Defendants, the Insurance Defendants, Defendant Savage, and the Fire Prevention Defendants that have opposed Plaintiffs' Motion.

### 1. Prosecuting Defendants

The Proposed Amended Complaint asserts against the Prosecuting Defendants claims for common law false arrest, malicious prosecution, negligent hiring, and supervision, and retention, as well as § 1983 violations for false arrest, malicious prosecution and denial of a fair trial. The Proposed Amended Complaint, as discussed in connection with the Complaint, Discussion, *supra*, at 17-18, fails to establish any basis upon which Defendants Orleans County Sheriff, the Crime Task Force, the Albion Police, and the Niagara County Sheriff may be sued given that such Defendants, as administrative arms of municipal corporations, do not exist separate and apart from the municipality and thus do not have their own legal identity. *Laboy*, __ F.Supp.3d at __; 2015 WL 1977251, at * 6 (W.D.N.Y. May 4, 2015).

With regard to Defendants Orleans County, the Town, the Village, Doyle, Fuller, Gifaldi, and Hughes, as discussed, Discussion, *supra*, at 22-24, the Indictment creates a rebuttable presumption of probable cause that defeats the common law and § 1983 false arrest and malicious prosecution claims. Significantly, Plaintiffs do not describe what was put before the Grand Jury that Plaintiffs maintain was false or fraudulent and the Proposed Amended Complaint is devoid of any factual allegations that any Defendant cajoled or importuned any witness to appear to testify untruthfully before the Grand Jury so as to obtain the Indictment. *See Rohman v. New York City Transit Authority (NYCTA)*, 215 F.3d 208, 217 (2d Cir. 2000) (defendant to malicious prosecution claim must be shown to have knowingly provided false or fabricated evidence or importuned authorities to act). The Proposed Amended Complaint also lacks reasonable clarity as to whether Plaintiffs assert any moving Defendant was responsible for submitting the Investigative Reports to the Grand Jury as evidence on which the Grand Jury could indict Plaintiffs. Nevertheless, that Plaintiffs sue Savage, whose only participation in the events leading to Plaintiffs' arrest and prosecution is the preparation of the Investigative Reports, strongly implies Plaintiffs' believe the Investigative Reports were presented to the Grand Jury.

Nor is the Investigative Report inconsistent with a finding of probable cause, the absence of which is a necessary element of the false arrest and malicious prosecution claims. In particular, the Investigative Report states the Albion Police initially listed the fire's cause as "undetermined pending further investigation." Investigative Report at 2. Savage determined the fire's origin was located near the rear wall of the shop's office near Harris's desk and a large sofa where most of the fire damage had occurred. *Id.* at

3.  Although the remains of a medium sized red plastic trash can with "fire/melt damage" and which had "melted into itself," was found in front of Wright's desk instead of in its regular location between Harris's desk and the large sofa, *id.*, the caption to Photo 52 depicting the red plastic trash can indicates the trash can may have been kicked by fire department personnel while extinguishing the fire.  An electrical cause of the fire, as Plaintiffs urge, Proposed Amended Complaint ¶¶ 45-47, is inconsistent with Savage's determination that "[e]xamination of structural electrical conductors and receptacles showed no arc damage or any indication of being related to the cause of the fire," Investigative Report at 3, and that a power strip on the floor near Harris's desk "sustained total fire damage" although Harris "stated it was not plugged in or being used." *Id.*

Further, the Investigative Report contains a motive for arson.  In particular, when interviewed by Savage, both Harris and Wright reported the shop was having financial difficulties and Wright further stated he had personally borrowed $ 70,000 for the shop. Investigative Report at 4.  It is noted in the Investigative Report that Plaintiffs' inability after being notified of the fire to return to the shop for 30 to 40 minutes because Plaintiffs "had to find a ride" was inconsistent with Plaintiffs' statements to Savage that Wright drove Plaintiff to her home where they both remained until learning of the fire. *Id.* at 5.  The statement given by both Harris and Wright that the shop's rear door "could be secured with a good slam shut," *id.* at 4, is inconsistent with the finding that the door's striker plate was "very loose" such that "[t]he plunger was not able to seat properly in the striker plate and could easily move. *Id.* at 3.  Moreover, although the Investigative Report does not contain a conclusive determination of the cause of the

fire, the Investigative Report states that "incendiary was not eliminated," *id.* at 4, and the Supplemental Report states that "incendiary still not eliminated."  Supplemental Report at 1.  It is significant that Plaintiffs do not challenge the accuracy of the Investigative or Supplemental Reports, nor do Plaintiffs attribute any part of the reports to fraud or bad faith.  The Investigative Report and the Supplemental Report thus are not inconsistent with probable cause supporting both the Indictment and the subsequent arrest and prosecution of Plaintiffs.  Thus, the Proposed Amended Complaint does not plausibly allege that any of the Prosecuting Defendants was responsible for the malicious prosecution of Plaintiffs as Plaintiffs allege, and is therefore futile.

With regard to Defendant Doyle, the Proposed Amended Complaint alleges only that Doyle failed to report Mesita's observation that she perceived an electrical fire odor at the scene of the fire.  Proposed Amended Complaint ¶¶ 45-47.  Such allegations, however, assert a claim of negligent investigation which is not recognized under New York law, *see McCray v. City of New York*, 2007 WL 4352748, at * 29 (S.D.N.Y. Dec. 11, 2007) (citing *Jenkins v. City of New York*, 1992 WL 147647 at * 8 (S.D.N.Y. June 15, 1992) (citing *Pandolfo v. U.A. Cable Systems*, 568 N.Y.S.2d 981, 982 (4th Dept. 1991))), nor is negligent investigation a basis for § 1983 liability in the absence of some special relationship creating an affirmative duty.  *See*, *e.g.*, *Daniels v. Williams*, 474 U.S. 327, 332-33 (1986) (negligent inaction will not suffice to establish a constitutional violation because Due Process clause is not implicated by a state official's negligent act causing unintended loss or injury to life, liberty, or property).  *See also Daniels*, 474 U.S. at 332-33.

The Proposed Amended Complaint fails to set forth any allegation of unlawful conduct undertaken by Defendants Fuller and Hughes. Rather, Fuller is alleged to have conducted interviews of Harris and Wright at the Albion Police Station, Proposed Amended Complaint ¶ 49, which interview of Wright was subsequently lost by unidentified Albion Police, Proposed Amended Complaint ¶ 49, and both Fuller and Hughes are alleged to have informed Harris that the shop's security "DVR was sent out for testing to obtain the images captured on it during [ ] the evening in question," but "the Albion Police Department and its investigators failed to safeguard this important piece of exculpatory evidence." *Id.* ¶ 72. Both of these allegations assert, at most, the Fuller was negligent in investigating the fire which, as discussed, Discussion, *supra*, at 43-44, is not a ground for liability under either state law or § 1983.

Defendant Gifaldi is named as a Defendant in the Proposed Amended Complaint's common law and § 1983 false arrest and malicious prosecution claims. As discussed, Discussion, *supra*, at 22-24, the Indictment creates a presumption of probable cause that is a complete defense to these claims, and none of the proposed factual allegations against Gifaldi rebuts the presumption. Specifically, Gifaldi is alleged to have failed to secure video footage from a security DVR which would have established Plaintiffs did not set the fire, Proposed Amended Complaint ¶ 71, but such failure, if true, constitutes investigatory negligence which is insufficient to sustain liability for false arrest and malicious prosecution under New York law or § 1983. *See Daniels*, 474 U.S. at 332-33 (negligent inaction not actionable under § 1983); *McCray*, 2007 WL 4352748, at * 29 (negligent investigation not recognized under New York law). Gifaldi is also alleged to have "interviewed witnesses of known doubtfulness," and provided false

Grand Jury testimony to secure the Indictment, Proposed Amended Complaint ¶ 74, embellished his job title at the trial, claiming to be a "Level II" arson investigator when no such designation exists, *id*. ¶ 75, and also falsely testified at trial that he failed to take any contemporaneous hand written notes which was contradicted by witnesses who reported observing Gifaldi taking notes. *Id*. ¶ 76. A law enforcement officer is absolutely immune from under § 1983 based on perjurious testimony either before the Grand Jury or given at trial. *Coggins v. Buonora*, 776 F.3d 108, 112 (2d Cir. 2015) (citing *Rehberg v. Paulk*, __ U.S. __, 132 S.Ct. 1497, 1506 (2012)). Further, Plaintiffs' assertions that Gifaldi coerced Defendants Adrian Parks ("Parks"), and Michael Jutrowski ("Jutrowski"), into falsely testifying against Plaintiffs, Proposed Amended Complaint ¶¶ 61-63, is negated by the assertion that "Defendants' own investigation provided [the testimony of Parks and Jutrowski] would be false and conflicted with the statements given by these witnesses." *Id*. ¶ 64. The Proposed Amended Complaint thus fails to state a claim against Gifaldi.

Accordingly, Plaintiffs' motion is DENIED as to the Prosecuting Defendants.

## 2. Insurance Defendants

Insurance Defendants are listed as Defendants in the Proposed Amended Complaint's state common law malicious prosecution claim and negligent hiring, supervision and retention claims. Insurance Defendants are correct, Insurance Defendants' Reply at 3-4, that the Proposed Amended Complaint fails to cure any of the group-pleading and vagueness deficiencies of the Complaint. *See* Discussion, *supra*, at 28-29. In particular, the Proposed Amended Complaint's allegations against the Insurance Defendants assert only that the Insurance Defendants never determined the

fire's cause, Proposed Amended Complaint ¶ 39 ("the cause of the fire was never determined."), but that someone else alerted law enforcement that Plaintiffs intentionally started the fire. *Id.* ¶ 51 ("defendant Donald Clawson tipped off police Wright committed arson and burned down Harris's shop. Records indicate Clawson contacted Crime Stoppers and was seeking reward money for his lead."), and ¶ 52 ("Clawson contacted the Albion Police Department and/or Orleans County Sheriff and/or Hartford Insurance Co. and told these agencies and the insurance company David Wright committed arson and burned down Harris's shop."). No liability for malicious prosecution can be attributed to the Insurance Defendants based on the failure to determine the cause of the fire.

Nor is there any allegation that the Insurance Defendants improperly importuned or cajoled any law enforcement officers or the prosecutor to charge Plaintiffs. *Rohman*, 215 F.3d at 217 (defendant must have played an "'active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act). Although the Proposed Amended Complaint asserts Nassivera, when testifying at trial, "intentionally misused tape recorded statements of the Plaintiffs," which "contained many inaudible portions and Nassivera filled in the blanks during his testimony with slanted interpretations" because Nassivera, as Hartford's agent "was motivated to sabatoge Plaintiff Harris'[s] fire claim in any manner he could," Proposed Amended Complaint ¶ 73, Nassivera's trial testimony, even if perjured, is entitled to absolute immunity. *Coggins*, 776 F.3d at 112 (citing *Rehberg*, 132 S.Ct. at 1506).

Moreover, the Proposed Amended Complaint fails to avoid the Insurance Defendants' statutory immunity pursuant to § 3432(a) and (b)(4). Significantly, Plaintiffs

failed to allege any fraud or bad faith on the part of the Insurance Defendants as to the "information, reports, assistance in investigations, [and] notifications" as required to avoid the applicable immunity. Even if the Insurance Defendants relied in some way on a source, Clawson, as a person of dubious credibility, such reliance is insufficient to support a malicious prosecution claim. *See Husbands v. City of New York*, 2007 WL 2454106, at * 8 (S.D.N.Y. Aug. 16, 2007) (holding with regard to false arrest and malicious prosecution claims that questionable credibility of witness's testimony "does not vitiate the basis for probable cause").

Accordingly, Plaintiffs' Motion is DENIED on the basis of futility as to Insurance Defendants against whom the Proposed Amended Complaint fails to state a claim.

### 3. Defendant Savage

Savage is named in the Proposed Amended Complaint as a Defendant only to the malicious prosecution claim under New York common law. Proposed Amended Complaint ¶ 103. The Proposed Amended Complaint asserts only that Savage, working on contract with Hartford, performed a forensic investigation of the fire to determine the fire's origin and cause and prepared a report regarding the investigation in which Savage concluded the fire's origin was along the shop's office's rear wall, that the ignition source, the first material ignited, and the ignition sequence were "unknown," such that the fire's "cause classification" was "undetermined with incendiary not eliminated." Proposed Amended Complaint ¶ 65. Even upon being provided additional fire debris samples one of which, upon laboratory analysis, was positive for fire accelerant "consistent with a 'medium petroleum distillate' such as mineral spirits, some paint thinners, and some charcoal starters," Savage did not consider the findings

sufficiently significant to support altering her original conclusion that the fire's cause was undetermined. *Id.* ¶ 67. Nothing within these allegations plausibly implies that Savage engaged in any fraud or bad faith so as to subject Savage to any liability in connection with Plaintiffs' arrest and criminal prosecution for the fire. *See Otis-Wisher*, 2015 WL 255701, at * 1 (to withstand dismissal allegation must plausibly establish defendant's liability). Even assuming, *arguendo*, the New York and § 1983 claims for false arrest and malicious prosecution could be brought against Savage, a private actor, *see Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (§ 1983 liability requires defendant act under color of state law), Savage's conclusion in the Investigative Report and the fire's cause was "undetermined with incendiary not eliminated," a conclusion favorable to Plaintiffs, simply cannot be the basis for any such claims.

Plaintiffs' Motion thus is DENIED as to Savage.

### 4. Fire Prevention Defendants

The Proposed Amended Complaint's malicious prosecution claim is asserted against all Fire Prevention Defendants, Proposed Amended Complaint ¶ 103 (Holter and Shadic), and ¶ 109 (Fire Prevention Office), and the negligent hiring, supervision and retention claim is asserted against Fire Prevention Office. *Id.* ¶¶ 112, 115, and 117. Insofar as the Proposed Amended Complaint fails to allege any involvement by Defendant Shadic with the fire investigation and subsequent prosecution, it fails to state a claim as against Shadic and is therefore futile. The Proposed Amended Complaint's allegation that Defendant Holter was involved in the fire investigation, *id.* ¶ 9, and did not conduct a proper arson investigation but instead "rubber-stamped" Gifaldi's investigation, *id.* ¶ 10, fails to plead the requisite element of malice for a malicious

prosecution claim because it, at most, asserts a claim for negligent investigation which, as discussed, Discussion, *supra*, at 43-44, does not support a false arrest or malicious prosecution claim. Further, absent any claim stated against either Shadic or Holter, there is no basis for finding Shadic or Holter was personally involved in either the alleged malicious prosecution of Plaintiffs, such that the Fire Prevention Office cannot be held liable for negligent hiring, supervision or retention of these individual Defendants. *See Bouchard*, 719 F.Supp.2d at 261 ("A cause of action for negligent hiring or retention requires allegations that the employer . . . failed to investigate a prospective employee notwithstanding knowledge of 'facts that would lead a reasonably prudent person to investigate that prospective employee.'" (quoting *Richardson v. City of New York*, 2006 WL 3771115, at * 3 (S.D.N.Y. Dec. 21, 2006))).

Plaintiffs' Motion is DENIED as to the Fire Prevention Defendants.

### 5. Non-moving Defendants

Although Plaintiffs' Motion is DENIED with regard to the Prosecuting Defendants, the Insurance Defendants, Defendant Savage, and the Fire Prevention Defendants and, assuming the District Judge agrees with the undersigned's recommendation that the action be dismissed as against the moving Defendants for failure to state a claim, the non-moving Defendants have not opposed Plaintiffs' Motion seeking leave to file the Proposed Amended Complaint which, despite failing to cure the deficiencies of the Complaint, does provide additional facts which are helpful to understand Plaintiffs' claims. Accordingly, insofar as Plaintiffs' Motion is unopposed by the non-moving Defendants, Plaintiffs' Motion is GRANTED as to these non-moving Defendants. Plaintiffs are directed to file **within ten (10) days** the Amended Complaint only

asserting claims against the non-moving Defendants, but should not attempt to re-plead the claims that for which dismissal with prejudice is recommended as to the moving Defendants. Nothing in the foregoing Report and Recommendation and Decision and Order is intended to indicate how the court may rule on any possible motions by non-moving Defendants addressed to the Amended Complaint.

## CONCLUSION

Based on the foregoing, the Prosecuting Defendants' Motion (Doc. No. 22) should be GRANTED in part and DENIED in part; the Insurance Defendants' Motion (Doc. No. 28) should be GRANTED; Savage's Motion (Doc. No. 30) should be GRANTED insofar as it seeks to dismiss the Complaint for failure to state a claim and is DISMISSED as moot as to the alternative request for summary judgment; and the Fire Prevention Defendants' Motion (Doc. No. 36) should be GRANTED; Plaintiffs' Motion is GRANTED in part and DENIED in part.

SO ORDERED as to Plaintiff's
Motion to Amend and Savage's
Motion for Summary Judgment.          /s/ Leslie G. Foschio

                                      _____
                                      LESLIE G. FOSCHIO
                                      UNITED STATES MAGISTRATE JUDGE

                                      Respectfully submitted as to Prosecuting Defendants'
                                      Motion, Insurance Defendants' Motion, Savage's
                                      Motion, and Fire Prevention Defendants' Motion,

                                      /s/ Leslie G. Foschio

                                      _____
                                      LESLIE G. FOSCHIO
                                      UNITED STATES MAGISTRATE JUDGE

DATED:        September 10, 2015
              Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiffs and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      September 10, 2015
                  Buffalo, New York